Shetty v. Trivago N.V. 19-766 Trivago failed to disclose in its offering materials that it was implementing what it described as one of the biggest changes in the recent past to its marketplace. And it was doing so to address the fact that the advertiser responsible for 44 percent of its revenue was not complying with its landing page rules. According to Trivago executives, price lines violations were creating inefficiencies in the marketplace and inferior overall user value. They were undermining Trivago's strategic direction, which was to increase competitiveness for smaller advertisers. And so, like I said, they implemented what Defendant Heffer described as the biggest change in the recent past to their marketplace. None of this was disclosed to investors in the company's offering materials. The district court dismissed plaintiff's section 11 claims based on item 303, which plaintiff argues required disclosure in this case, because these facts, the district court felt, were not reasonably likely to be material to the district court. What allegations do you point to that would establish contemporaneous knowledge on the part of Trivago that it reasonably expected the relevance assessment and its implementation to have a material impact on its net sales or revenues? I read this, and it seemed quite unclear, given their cautionary language. They didn't know if people were going to pay the penalty or leave the site or what was going to happen, really, from what I could see. So where did you allege that they knew at the time that this would have a material impact on their sales and revenues? Well, there's kind of two issues with that. One is plaintiff actually doesn't believe it's necessary under item 303 to state that the defendants knew that it was reasonably likely to be material. The issue is if they know of the fact, and that fact is reasonably likely to be material, they're obligated to disclose it. It kind of puts the burden on them to disclose potential problems. But there is actually — Item 303 speaks to trends, though, and known trends, right? It also includes uncertainties. So we're arguing here that the effect, whether or not Priceline would begin to comply with their landing page rules after having started violating them, was an uncertainty. It was an uncertainty which, as the defendant's state was creating inefficiencies, inferior overall user value, and undermining the company's strategic direction. We believe that they were obligated, therefore, to disclose these facts to investors in their offering. But it's not uncertainty as to whether there's a trend. There has to be a trend, and the company has to know there's a trend, even though, as you point out, you don't necessarily know how long it's going to last or how strong it's going to be. But there has to be — it has to be sufficient that it's material, which means it has to last a while. Item 303, Your Honor, does not require there to be a trend. Item 303 requires uncertainties. So, I mean, to take an example, if the company were to — Everything is uncertain. I mean, if you talk about all the things that we don't know, they outnumber the things we do know. But if there's an event where the company's largest customer is violating their landing page rules, they would be obligated to disclose that. Section 11, the Securities Act, was enacted to implement a policy of full disclosure. So at the point at which their largest customer is violating their rules, it's having these deleterious effects on the company's business, and they're implementing the largest change in recent memory to their marketplace to address the issue. Did they know — did you allege facts suggesting they knew that Priceline's practice was actually having a deleterious effect? I thought they were adjusting to see if they could capture more, but there wasn't data about that, was there? So the executive defendants, in reflecting about why they made the change, they state that it was having a deleterious effect. They state that the Priceline's violations were creating inefficiencies in the marketplace and inferior overall user value. They state that undermines — actions were undermining Trivago's strategic direction, which was to create a more competitive environment for smaller advertisers in the platform. Is this similar to a material adverse effect on their net revenues? Item 303 requires that they — when there's an event such as this, they are obligated to disclose how these uncertainties might reasonably be expected to affect future revenue. There might be a chance that there would be no effect or some effect, but as long as a material effect is reasonably likely to occur, they're obligated to disclose it. Maybe you could go on to material falsity in your 10b claims, since you just have two minutes left. Sure. So material falsity in the 10b claims, this is actually a consistent pattern. Trivago had a pattern of, at first, nondisclosure of these issues and problems and this major change to their platform to address them. And then kind of had a — so in the fourth quarter, they say, you know, we had improved commercialization because of changes to our algorithm. They were asked, what changed your algorithm? They said, oh, you know, it's paraphrasing here, but something like, we have minor tweaks here and there. It's not really — it's too tough to get into the technical detail. That's false because what the reality was is that their largest customer began violating their policies and they implemented the biggest change ever to their platform to address the issue. What are your strongest allegations of scienter, that those were knowingly false and they intended them to mislead? Trivago's executives later indicated that they were personally involved in the implementation of the relevance assessment. So this is — of course, it's dealing with their largest customer. It's a major — it's one of the biggest changes ever to their platform. And they later described the reasons that they decided to implement it. So — It's knowledge, not scienter, is it? Sorry, knowledge with respect to — So they had knowledge of kind of the magnitude of the problem, the solution they were implementing to correct the problem. So they knew it was their largest advertiser. They knew it was one of the biggest changes ever. So, for example, in the fourth quarter, we say, well, we're just making — you know, we're always making small changes to our platform. That's knowingly false in light of what we later learned to be the facts of the change, which was that it was much more monumental than being, you know, minor tweaks to their algorithm that they're continuously making. So with respect to — I'd like to go back to the 303 claim. Materiality might be one of the lowest bars in all of security law. Rule 8 applies. Item 303 requires disclosure as long as something's reasonably likely to occur. I'd encourage the Court to look to Litwin for the standard there. We think we've more than adequately made this — made the case on materiality. You have three minutes for rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Jared Gerber from Cleary Gottlieb on behalf of Defendant Travago. The amended complaint here fails for a host of reasons as the district court held and as we laid out in our briefs. In the interest of time, I'll just focus on a couple of the most significant flaws here. Perhaps the most fundamental one that I think Judge Carney was getting at before is that this action is based on pure hindsight, and this is something that applies equally to the Securities Act claims and the Exchange Act claims. There's not a single allegation here based on contemporaneous undisclosed information. Let me ask about that, actually. I gather that Priceline and its affiliated brands accounted for somewhere between 27 percent and 43 percent of Travago's total revenue. So if there was a change in the model for dealing with a customer of that magnitude, why would it have been unreasonable to expect under Item 303 that there would be a material effect in assessing a penalty or that could even have called on or prompted Priceline to withdraw or change its relationship in a major way? We had that vulnerability. Why wasn't that suitable and required for disclosure? So the material effect needs to be reasonably likely, and here I think as of the time that the relevance assessment was adopted and as of the time of the IPO, it was not reasonably likely to occur because it depended on how Priceline and other customers reacted to the relevance assessment, whether they would decide to adopt their landing pages so they wouldn't have to pay any penalty at the time, so there would be no impact on revenue. So you'd say that even if it was not known, that because it was not known what the effect would be, the fact that a change was going to occur with respect to the major client, that is not required to be disclosed because no one knows what's going to happen. That's right. You need to be able to tell that it's reasonably likely to have a material effect going forward. So the fact of volatility of some kind is not something that's required to be disclosed under Item 303. Is that your view? That's right, and I think that's also the SEC's view. If you look at the SEC release that the plaintiffs cite here, the SEC distinguishes between required disclosures under Item 303. That's when there's a known trend that's reasonably likely to have a material effect, and it distinguishes that from forward-looking information that's optional under Item 303, where the impact of the trend is uncertain. Well, either one of two things could happen. Either the companies could come into compliance or they could remain out of compliance. If they remained out of compliance, which is what happened at first, there'd be a revenue spike. But if they came into compliance, wouldn't that mean that a company for which your client gets 40 percent of its revenue has improved its website in a way that makes it more friendly to customers, to consumers, and that there could be a benefit, a favorable even material improvement in your revenue, so that the question is, we don't know whether it's up or we don't know whether it's down, but we know it is, as your adversary says, uncertain. Yes, so I think that there's obviously expected to be a benefit. There's expected to be a benefit in every business decision that's made. Every business initiative is expected. A company wouldn't adopt a change unless they thought it would help the business over time. Yes, but if they adopt one that they think will materially help the business, then they should disclose that. You would agree. That's the requirement of Item 303, is if you reasonably expect it to be material. I don't think that that's adequately alleged here, and I don't think that you can infer that just from the fact that Priceline was a large customer. There are no allegations about how the revenue would be impacted if Priceline just changed their landing pages and didn't pay any additional revenue under the relevance assessment, whether that would be material or not, and whether it would be reasonably likely to be material, even if it's not absolutely material. I think it just the standard can't be that a company has to disclose every internal strategy that it has that might have an impact on revenue that a plaintiff might feel. On 40 percent of its revenue? Well, that's 23 to 46 percent, and that's the overall revenue, but that's not the change from the relevance assessment. That's just the amount of the overall revenue that's attributable to Priceline, and there are no allegations about what the impact was to that amount of revenue in absolute dollar figures and whether that amount is material, was reasonably likely to be material, was anticipated to be material. So you would say that if there were a change in customer policy such that Trivago refused or was going to refuse to deal with any company whose name started with a P, that that might require disclosure, but the effects here were really very uncertain about how its customers would respond, including Priceline. And this is Priceline and its affiliates, right? So there were several different companies that might have had different ways of dealing with a penalty in the future. Is that right? That's right. And I do want to bring the Court back to the SEC release that says, required disclosure is based on currently known trends, events, and uncertainties that are reasonably expected to have material effects. In contrast, optional forward-looking disclosure involves anticipating a future trend or event or anticipating a less predictable impact of a known event, trend, or uncertainty. It's not so easy to tell the difference between those two things. Well, I think what we've just been talking about is a less predictable impact. It could have an impact. It could have a material impact. It might not have a material impact. It might have an impact on revenue. It might not have an impact on revenue. That's the sort of optional forward-looking disclosure that the SEC realizes is not called for by Item 303. I'd like to move on to the Exchange Act since I only have a couple of minutes left. There, the District Court, I think, correctly held that there is no misstatement or no scienter. On the misstatement side, the plaintiff has limited their claims to just a small number of really quibbles with the way that we describe the relevance assessment. And this Court's case law is clear that the companies are not required. One of the drivers as opposed to the major driver. Right. That's right. And I think that the complaint doesn't adequately plead that the relevance assessment was a big thing as opposed to a small thing in the fourth quarter. And I think that the complaint actually affirmatively disproves the theory that it was the entire driver of the revenue increase. Here, the complaint alleges this entire allegation is based on the after-the-fact statement that revenue increased 10 percent as a result, or 10 percent of the revenue increase was attributable to the relevance assessment. And that means that 90 percent of the revenue increase was caused by other factors. What other factors might have been driving revenue increases? You know, the company has all sorts of business that it does. It could have been, you know, seasonality or an increase in the other companies that were listing on the site, an increase in travel, the general economy. There are a whole host of factors that could have led to an increase in revenue and that did cause 90 percent of the increase in revenue. Plaintiffs try to bring that down to a sub-metric of revenue, the revenue per qualified referral, to say that, you know, that smaller number could have been changed more by just the 10 percent change. But there's still the 90 percent that had nine times greater impact on that sub-number than the relevance assessment did. So it would have been affirmatively misleading to say that the relevance assessment was entirely responsible for it. The last point I want to make to get at Judge Park's point is that there really is no allegation of, no adequate allegation of scienter here. There's no particularized fact, no internal report, no stock sales, no, you know, witness. There's nothing citing here. There's just the hindsight assumption that because something bad happened later, it must have been known before. And that's plainly insufficient under this Court's decisions. Judge Friendly called that fraud by hindsight. I see him peering over my shoulder. That's not sufficient here. The other theories that they advance are really just assumptions. The company must have known. You should assume the company knew. And that's just not sufficient under the PSLRA. So with that, the decision should be affirmed in its entirety. Thank you very much. Thank you very much. Mr. Lenderhan, you have three minutes. So the purpose of the Securities Act is to provide an atmosphere of full disclosure. What should have been done here is investors should have been notified in the offering materials that they're having these major problems with their largest customer and that they're implementing this major change to their platform, and then let customers decide at that point, you know, whether they're going to buy the stock, whether they're going to participate in the IPO, if they're willing to pay the price that the company is asking in the IPO. As defendants basically admitted in their portion here, they were unsure about the effect that Priceline was going to have. The executive said that Priceline's actions were having a deleterious impact. These were all issues, events, uncertainties that were present at the time of the IPO. Plaintiff has adequately alleged that the policy to correct those issues was being implemented at the time of the IPO, and all of this should have been disclosed to investors because, as Your Honor said, whether or not — so if Priceline continued its violations, it was going to continue to have these deleterious effects that defendants described, and in fact did continue to have these deleterious effects until the end of the second quarter. If Trivago or if Priceline began to comply, then obviously it would have corrected this major problem that they were experiencing at the IPO. Regardless of which, kind of either direction it went, it was going to be material. Defendants had a right to know. They had a right to know the risk. They had a right to know that while Priceline was kind of deteriorating the company's platform, creating these inferior overall user value, creating inefficiencies, dissuading smaller advertisers from joining the platform, the company's revenue was being kept aloft by this penalty assessment, which accounted for 10 percent, but that's 10 percent of their growth. So if their growth was 60 percent, it was 10 percent of the 60, which is not 6 percent, but 10 percent of the 60. So, and again, you know, the district court in deciding that these issues were not reasonably likely to be material ignored two of the key facts, which were the descriptions by the executives that it was having a deleterious effect on the company's marketplace, which was creating inferior overall user value. The district court ignored those, and the district court took the statement about this is the biggest change ever to our platform, and said, well, the company wasn't talking about kind of the change to their platform. What the company was talking about was, or what the defendants were talking about, was just the eventual financial impact. So by kind of ignoring those three key facts, which go toward the question of whether or not these issues were reasonably likely to be material, we think that should be reversed. And, in fact, you know, at the end of the day, you know, these issues were material. So that goes somewhat to the question. Your argument under the Exchange Act concerning whether something was largely driven or one of the drivers, that was not made in the district court, was it? The issue of whether, well, those statements that we alleged that they're false for those reasons were in the complaint that we filed in the district court. I'm sorry, I'm not sure. Did you argue that in the district court? I know it's in the complaint. I'd have to check the briefing. I'm pretty sure that was covered in the briefing. I think we did cover it. I'm wrong on that. Take a look. Okay, thank you. Thank you very much. We'll reserve decision.